UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/3/2019

ANTHONY D. AMAKER,

                              Plaintiff,

        -against-

W. LEE, et al.,

                              Defendants.

No. 13-cv-5292(NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Anthony Amaker brings this action against Defendants Anthony J. Annucci, Deputy Commissioner Joseph Bellnier, Assistant Commissioner and Counsel Maureen Boll, Deputy Superintendent Brandow, Lieutenant O. Bucolo, Deputy Superintendent Burnett, Correctional Officer Michael Burzo, Captain Carey, Correctional Officer John Chmielewski, Sergeant John Comforti, Head Cook Ahmed Elmanakhey,[1] Correctional Officer J. Erns, Inspector General Vernon Fonda, Deputy Superintendent Luis Franco, Correctional Officer Hoiston, Deputy Superintendent James Johnson, Sergeant John Johnson, Sergeant Joseph, Deputy Commissioner David-Knapp, Sergeant Ronald Kuntz, Superintendent William Lee, Correction Officer Ryan Lieberman, Assistant Commissioner Jeffrey McCoy, Captain Thomas Melville, Lieutenant Murphy, Inspector William Noonan, Sergeant Kevin O'Connors, L. O'Neill, Calculations Clerk Heather Piquet, and Correction Officer George Santos. ("Second Amended Complaint," ECF No. 87.) Plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc et seq. and 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss Plaintiff's Second Amended

---

[1] Defendant Elmanakhey's name also appears as "El-Manakhey." For Defendant Elmanakhey and all Defendants, the Court will apply the spelling used in the docket.

Complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(6). (ECF Nos. 120 & 121.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the Second Amended Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

After filing a 42 U.S.C. § 1983 action in the Western District of New York, Plaintiff arrived at Green Haven Correctional Facility ("Green Haven") on March 19, 2013. (Second Am. Compl. ¶ 6.) Shortly after his arrival, Plaintiff, a member of the Nation of Islam, was denied access to religious services on April 12, 19, and 26 of 2013. (*Id.* ¶ 7.) Plaintiff filed a grievance about these incidents with Defendant Santos on April 26, 2013.[2] (*Id.* ¶ 7.)

After Plaintiff filed his grievance, he endured multiple instances of retaliation. For instance, he was issued ill-fitting underwear and Defendants refused to allow Plaintiff to exchange the item for the appropriate size. (*Id.* ¶ 8.) Additionally, Defendants O'Connors and Lee "intentionally deadlocked" a grievance he filed about this issue on June 13, 2013.[3] (*Id.*) Approximately a month later, in July, Plaintiff filed a grievance about a regulation which limited inmates to only tee shirts with pockets in the mess hall after Plaintiff was sent back to his cell without a meal for not wearing a tee shirt with a pocket. (*Id.* ¶ 9.) That grievance has not been addressed. (*Id.*) In another incident, Plaintiff purchased a pair of boots, but Defendant Comforti, based on an outdated CORC decision, required Plaintiff to return the boots. (*Id.* ¶¶ 10 – 11.) Plaintiff had purchased the boots because the state-issued boots dirtied his socks which

---

[2] According to the Second Amended Complaint, that grievance is still under appeal. (Second Am. Compl. ¶ 7.)

[3] Plaintiff claims that no decision was made on this grievance but goes on in the same paragraph to state that he received a reply in August 2013: "only one time will be allowed to exchange the underwears." (*Id.* ¶ 8.)

caused him to be in violation of religious principles when he removed his shoes to pray during religious services. (*Id.* ¶ 11.)

When Ramadan started on July 9, 2013, Plaintiff alleges that he was subjected to additional violations of his constitutional rights. On July 15, 2013, Defendant Burzo intentionally violated Plaintiff's religious tenants by smoking cigarettes in the gym where Plaintiff and other Nation of Islam members were holding religious services. (*Id.* ¶ 16.) As part of Ramadan, Plaintiff and others were assigned to prepare and serve meals. (*Id.* ¶ 12.) On July 17, 2013, during meal preparation, Defendant Elmanakhey put his gloveless hands into the food pan for members of the Nation of Islam. (*Id.*) Defendant Elmanakhey also told the Nation of Islam food workers that if they did not provide him with two slices of their pizza, he would take what he wanted from their trays; he had a habit of stealing food from the Nation of Islam members and giving it to the Sunni Muslims. (*Id.* ¶ 13.)

The next day, Plaintiff was cleaning the kitchen and preparing to take his allotted serving of food when Defendant Elmanakhey came in and told him to throw away the extra food. (*Id.* ¶ 14.) After Plaintiff complied, Defendant Elmanakhey began following him around and asking him what he did with the extra food. (*Id.*) Plaintiff showed him and others the extra food he had deposited in the trash can, but Defendant Elmanakhey proceeded to berate Plaintiff. (*Id.*) Plaintiff alleges that Defendant Elmanakhey wanted to "deny [him] the necessary calories intake as everyone else." (*Id.* ¶ 15.) On July 19, 2013, Defendant Lieberman told Plaintiff that Defendant Elmanakhey did not want Plaintiff working in the mess hall and told Plaintiff to go back to his cell. (*Id.*) Several officers, including Defendants Burzo, Lieberman, and Hoiston, attempted to intimidate Plaintiff outside of the mess hall when Plaintiff tried to explain that he was entitled to "freedom of [ ] religion during Ramadan" and requested to see Sargent Joseph

instead of returning to his cell. (*Id.*) Defendant Lieberman proceeded to issue Plaintiff a misbehavior report for disobeying a direct order. (*Id.*)

Plaintiff was issued another misbehavior report on July 21, 2013 from Defendants Lieberman and Elmanakhey in retaliation for a lawsuit Plaintiff had initiated about being deprived of necessary calories during Ramadan. (*Id.* ¶ 19.) In the report, those Defendants falsely stated that Plaintiff went to the mess hall after he was told not to and that Plaintiff was attempting to smuggle food. (*Id.*) A hearing was held on July 22, 2013 before Defendant Bucolo who allegedly coached witnesses and wanted to punish Plaintiff for observing Ramadan. (*Id.* ¶¶ 20 & 34.) Defendant Bucolo sentenced Plaintiff to thirty days in "keeplock." (*Id.* ¶ 21.) Plaintiff appealed the decision, but his appeal was denied. (*Id.* ¶ 20.) While Plaintiff was in keeplock, he was denied adequate religion-approved food for at least eight days, and he received no meal on the day he was placed in keeplock. (*Id.* ¶ 21.)

After Plaintiff was released from keeplock, he was denied access to the court. His access to the law library was restricted which caused him to miss a deadline in his appeal of a state court decision. (*Id.* ¶ 22.) He was also denied the postage he needed to send legal documents. (*Id.* ¶ 23.) Plaintiff filed a grievance on these issues on October 4, 2013. (*Id.* ¶ 24.) Sometime after, Plaintiff was moved to a different block where Defendant Erns confronted and verbally harassed him for having more than four bags of property. (*Id.* ¶ 24.) Plaintiff explained that one of his bags was full of legal documents, and Defendant Erns proceeded to search the bags. (*Id.*) Defendant Kuntz approved the search, causing Plaintiff extreme stress. (*Id.* ¶¶ 24 – 25.) Later, Plaintiff discussed the issue with Defendant Lee who also approved of the search. (*Id.* ¶ 25.) Defendant Chmielewski interrupted their conversation to intimidate Plaintiff and proceeded to frisk Plaintiff and confiscate his notes and prayer oil. (*Id.*) Plaintiff filed a grievance against

Defendants Erns and Kuntz.  (*Id.* ¶ 26.)  Shortly thereafter, Plaintiff received a retaliatory

misbehavior report for failing to pick up a spoon in the mess hall. (*Id.* ¶ 26.)  On November 15,

2013, Defendant Kuntz approached Plaintiff to discuss the grievance Plaintiff filed against him,

but the grievance has not otherwise been addressed.  (*Id.* ¶ 27.)

On December 10, 2013, the prison was locked down and inmates were told that "in order

to send out any mail they had to leave their mail open."  (*Id.* ¶ 28.)  Plaintiff informed

Defendants Carey and Johnson that this was a violation of the First Amendment.  (*Id.* ¶ 28.)

During the same lockdown, Plaintiff was subjected to a strip search, and this search occurred in

front of female correctional officers.  (*Id.* ¶ 29.)  As part of the search, inmates, which included

Plaintiff, were required to sit on the Body Orifice Security Scanner chair ("BOSS") even though

some inmates who sat on the chair had dirty underclothes.  (*Id.*)

Sometime after this incident, and after Plaintiff asked Defendant Bellnier about the

inappropriate set up of the Inmate Liaison Committee, Plaintiff was transferred to another

maximum-security prison in retaliation for filing lawsuits against the Attica Correctional

Facility.  (*Id.* ¶ 30.)  This transfer damaged Plaintiff's prospects for early release.  (*Id.*)  On top of

the transfer, Defendants Noonan, Fonda, and Annucci conspired to keep incorrect information in

Plaintiff's records in retaliation for his lawsuits and grievances.  (*Id.* ¶ 32.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

claim is facially plausible when the factual content pleaded allows a court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

Plaintiff brings this action pursuant to RLUIPA and 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment Rights. Defendants move to dismiss Plaintiff's Second Amended Complaint under Federal Rules of Civil Procedure Rule 12(b)(6). Specifically,

(1) Plaintiff fails to allege that most of Defendants were personally involved in the alleged violations of federal law; (2) Plaintiff failed to exhaust his remedies; (3) Plaintiff has failed to state a claim upon which relief can be granted; and, if the Court finds that Plaintiff stated any facially plausible claim, (4) Defendants have qualified immunity.

## I.      Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, inmates must exhaust all available administrative remedies before pursuing an action with respect to prison conditions under § 1983 or any other federal law in federal court.  § 1997e(a). "RLUIPA actions are included among the actions under 'other Federal law' for which the PLRA requires exhaustion." *Colliton v. Gonzalez*, No. 07-CV-2125(RJH)(MHD), 2011 WL 1118621, at *8 (S.D.N.Y. Mar. 23, 2011) (citing cases).

Exhaustion of remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-CV-9199(PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted). To satisfy the exhaustion requirement, a plaintiff must use all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). The burden is on Defendants to demonstrate that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009).  A Rule 12(b)(6) motion to dismiss for failure to exhaust should only be granted if "nonexhaustion is clear from the face of the complaint." *Lopez v. Cipolini*, No. 14-CV-2441 KMK, 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (quoting *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July

25, 2014)) (internal quotation mark omitted).

However, an inmate is not required to exhaust administrative remedies if those remedies are not available or the defendants waive the exhaustion affirmative defense.[4] *Williams v. Annucci*, No. 16-CV-7288(NSR), 2018 WL 3148362, at *7, 8 (S.D.N.Y. June 27, 2018). According to the Supreme Court, an affirmative remedy is functionally unavailable when (1) the remedy is in fact a dead end "with officers unable or consistently unwilling to provide any relief; (2) the administrate scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison officials prevent inmates from using the grievance process through "machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859 – 60 (2016). However, the Supreme Court noted that the above circumstances "will not often arise" "[g]iven prisons' own incentives to maintain functioning remedial processes." *Id.* at 1859.

Plaintiff alleges that he properly exhausted his claims by following the Green Haven grievance procedures and appealing unfavorable decisions. (Second Am. Compl. ¶ 47.) He also claims that none of his grievances filed after June 18, 2013 have been addressed by Defendants. (*Id.*) Specifically, Plaintiff filed grievances on (1) April 26, 2013 for the denial of access to religious services, which resulted in an unfavorable decision for Plaintiff which he appealed; (2) on June 13, 2013 about Defendants' failure to provide him with appropriately sized undergarments to which he received a response; (3) in July 2013 about a regulation on clothing worn in the mess hall; (4) on October 4, 2013 for restrictions on his access to the law library; and (5) in late summer or early autumn 2013 for Defendants Erns's and Kuntz's treatment of him and his possessions during a move between blocks. (*Id.* ¶¶ 7 – 9, 24 & 26.) Defendants, however,

---

[4] The Supreme Court overruled the "special circumstances" exception. *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

argue that Plaintiff has failed to exhaust claims arising from the denial of access to religious services in April 2013 and from his difficulties with state-issue clothing prior to bringing this action.

The Court agrees in part. Plaintiff states in his Second Amended Complaint that the religious services grievance was "reinvestigated after the filing of this initial complaint," but he also states in the same paragraph, "These matters have been grieved before with a dead end result from CORC." (*Id.* ¶ 7.) Interpreting the paragraph to raise the strongest argument it suggests, *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016), Plaintiff sufficiently alleged that he exhausted this issue.[5] However, the Court agrees that Plaintiff failed to exhaust any claims relating to his grievance about state-issue underwear.[6] Plaintiff himself states that he received a reply from Defendants on this grievance in August 2013. (*Id.* ¶ 8.) Plaintiff apparently, incorrectly, interpreted this response as some sort of waiver by Defendants and failed to appeal the decision before initiating this action. (*Id.*) Regardless of Plaintiff's mistake, the Complaint contains no allegations that Plaintiff took any steps to attempt to appeal this unfavorable response and, therefore, he failed to exhaust claims arising from that incident. *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007) (noting that to satisfy the exhaustion requirement a plaintiff must exhaust all available administrative remedies "through the highest level").

---

[5] Although Plaintiff exhausted this issue, he fails to plausibly allege the personal involvement of any Defendant, see *infra* Part II.

[6] To the extent that Defendants argue that Plaintiff failed to exhaust his claims relating to the tee shirt regulation, the Court disagrees. Plaintiff alleged that he filed a grievance which was never responded to (Second Am. Compl. ¶ 9), meaning that the grievance procedure was functionally unavailable to Plaintiff for that claim.

## II.    Lack of personal involvement

When, as here, a plaintiff seeks money damages against the defendants for violations of federal laws, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006)).  Personal involvement may include, but is not limited to, direct participation in the alleged violations.  *See Platt v. Village of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir. 1989)). The Second Circuit has previously found that the personal involvement of a supervisory defendant may be established by allegations that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights or inmates by failing to act on information indicating unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).  However, Courts in this Circuit are "divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Allah v. Annucci,* No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 7, 2017).

Neither the Supreme Court nor the Second Circuit have decided whether personal involvement is a prerequisite for a valid RLUIPA claim.  *Smith v. Graziano*, No. 08-CV-469(GLS)(RFT), 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010).  However, numerous district courts in this Circuit have held that "personal involvement is a necessary component of valid RLUIPA claims."  *Id.*; *see, e.g.*, *Corley v. City of New York*, No. 14-CV-3202(GHW), 2017

WL 4357662, at *17 (S.D.N.Y. Sept. 28, 2017) ("[C]ourts in this Circuit have held that personal involvement is also a necessary component of a valid RLUIPA claim."); *Curry v. Bradt*, No. 13-CV-355F, 2016 WL 1258341, at *2 (W.D.N.Y. Mar. 31, 2016); *Ramrattan v. Fischer*, No. 13-CV-6890(KPF), 2015 WL 3604242, at *9 (S.D.N.Y. June 9, 2015); *Loccenitt v. City of New York*, No. 12-CV-948(LTS)(MHD), 2013 WL 1091313, at *5 (S.D.N.Y. Mar. 15, 2013); *Vann v. Fischer*, No. 11-CV-1958(JPO), 2012 WL 2384428, at *5 (S.D.N.Y. June 21, 2012); *Hamilton v. Smith*, No. 06-CV-0805(GTS)(DRH), 2009 WL 3199520, at *9 (N.D.N.Y. Sept. 30, 2009).  This Court agrees and finds that there must be some personal involvement by the defendants to impose liability under RLUIPA.

Even assuming the continuing vitality of each of the *Colon* factors,  Plaintiff has failed to allege that Defendants Bellnier, Boll, Brandow, Chmielewski, Comforti, Fonda, Franco, James Johnson, John Johnson, Joseph, David-Knapp, McCoy, Murphy, Noonan, O'Neill, Piquet, or Santos were personally involved in the alleged actions giving rise to any of his § 1983 or RLUIPA claims.

The Second Amended Complaint makes no mention of Defendants John Johnson, McCoy, or Murphy except to name them as Defendants, and any allegations related to Defendants Boll,[7] Brandow,[8] James Johnson,[9] and Piquet[10] do not suggest that they violated the Constitution or any other federal law.  Therefore, the Court dismisses Plaintiff's claims against

---

[7] The sole allegation against Defendant Boll is that his written permission was required before officers would be allowed to check inmate mail, and this is not an allegation of wrongdoing.  (*Id.* ¶ 13.)

[8] Plaintiff does not allege that Defendant Brandow violated the law, merely that Defendant Brandow was not permitted to testify during Plaintiff's hearing before Defendant Bucolo.  (*Id.* ¶ 34.)

[9] The only allegation related to a Defendant James Johnson in the Second Amended Complaint is that he was with Defendant Carey when Defendant Carey spoke to Plaintiff about his mail. (*Id.* ¶ 28.)

[10] Plaintiff makes no substantive allegation against Defendant Piquet and only states that she was in charge of inmates' accounts. (*Id.* ¶ 23.)

those Defendants for lack of personal involvement. *See Johnson v. Sposato*, No. 15-CV-3654(JS)(ARL), 2015 WL 6550566, at *3 (E.D.N.Y. Sept. 22, 2015) (dismissing a plaintiff's claims against the defendants because the complaint did "not include any factual allegations sufficient to demonstrate personal involvement" by those defendants); *Mann v. Daniels*, No. 10-CV-7540(PKC)(THK), 2011 WL 2421285, at *2 (S.D.N.Y. June 9, 2011) (holding that the plaintiff did not plausibly allege that the defendants were personally involved because the complaint did not include facts about any "specific wrongdoing sufficient to constitute personal involvement").

Other Defendants, described below, are mentioned in the body of the Second Amended Complaint but not in such a way to indicate that they were personally involved in any unlawful conduct against Plaintiff.

Plaintiff alleges that Defendant Annucci transferred Plaintiff to another maximum-security prison even though he knew that this would create an adverse inference for parole purposes, that he and "others in Albany" knowingly kept false misbehavior reports in Plaintiff's records, and that he and others have "been imposing illegal rules against the 1st Amendment to free flow of mail." (Second Am. Compl. ¶ 30 – 33.) Plaintiff's allegation that Defendant Annucci imposed illegal rules leading to mail being tampered with in violation of the First Amendment, coupled with his description of the policy and its effect on him, is sufficient to establish Defendant Annucci's personal involvement in that claim. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (noting that a defendant may be personally involved in a supervisory capacity if he created a policy under which unconstitutional practices occurred or allowed that policy to continue). However, the allegation that Defendant Annucci, as well as Defendants Fonda and Noonan and unnamed others, kept false misbehavior reports is conclusory; there are

no facts supporting that the misbehavior reports were false or indicating what Defendants Annucci's, Fonda's, or Noonan's[11] roles were in keeping these reports in Plaintiff's records. Additionally, his allegations relating to Defendant Annucci and his transfer also fail to plausibly show that Defendant Annucci was involved in a violation of the law. Defendant Annucci allegedly had Plaintiff transferred to another facility and knew that officers at the Attica Correctional Facility, where Plaintiff had previously been held, were retaliating against Plaintiff, but Plaintiff does not allege how Defendant Annucci became aware of this alleged retaliation or that Defendant Annucci was grossly negligent or deliberately indifferent in transferring Plaintiff. (*Id.* ¶ 30.)

Defendant Bellnier is identified as the individual who signed a package directive, but Plaintiff does not claim that the directive was in violation or caused violation of federal law.[12] (*See* Second Am. Compl. ¶ 10.) Plaintiff also states that he was transferred to Green Haven after asking Defendant Bellnier about "the inappropriate set up of the Inmate Liaison Committee" and after filing lawsuits about retaliatory searches. (*Id.* ¶ 30.) As there are no allegations that Defendant Bellnier had a role in the decision to transfer Plaintiff or that Defendant Bellnier acted on or relayed Plaintiff's complaint to others, Plaintiff has not established that Defendant Bellnier was personally involved.

According to Plaintiff, Defendant Bucolo was biased against Plaintiff during his July 22, 2013 hearing, denying him the opportunity to call a witness and coaching the opposition's witnesses. (*Id.* ¶¶ 20, 34.) This is sufficient direct involvement for qualify as personal involvement. *See Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001) (holding that

---

[11] There are no other factual allegations which suggest that Defendants Noonan or Fonda were personally involved in violations of the law.

[12] Rather, Plaintiff asserts that Defendant Comforti deprived Plaintiff of his rights by failing to comply with facility rules about packages. (Second Am. Compl. ¶ 10.)

the plaintiff adequately alleged the personal involvement of the hearing officer who oversaw the plaintiff's hearing during which the plaintiff was allegedly deprived of due process).

Plaintiff alleges that Defendant Comforti deprived Plaintiff, in violation of existing directives at the facility, of his boots for discriminatory reasons. (*Id.* ¶ 10.) However, Plaintiff's reference to discrimination with respect to Defendant Comforti is conclusory. It is unclear form the face of the Second Amended Complaint on what basis Defendant Comforti allegedly discriminated against Plaintiff or how discrimination motivated his failure to adhere to the directive. *See Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, 866 F. Supp. 2d 147, 164 (E.D.N.Y. 2011). Plaintiff also claims that Defendant Burnett condoned Defendant Comforti's decision (Second Am. Compl. ¶ 11), but the Second Amended Complaint contains no other facts about Defendant Burnett's involvement; this is merely a conclusory statement and falls short of personal involvement in a violation of federal law. Additionally, Plaintiff alleges that when Plaintiff asked an unnamed officer about the policy requiring officers to search all inmate mail, the officer told him that they were following Defendant Burnett's orders. (*Id.* ¶ 28.) This allegation is sufficient to establish Defendant Burnett's supervisory personal involvement in any First Amendment violation relating to the mail policy.

Defendant Burzo allegedly participated in intimidating Plaintiff outside of the mess hall and smoked cigarettes in the area where Plaintiff and others were holding a religious service which is sufficient to show personal involvement. (*Id.* ¶¶ 15 – 16.)

Defendant Carey allegedly affirmed what appears to be an unfavorable ruling against Plaintiff on one of his misbehavior reports. (*Id.* ¶ 26.) This allegation is too vague to show that Defendant Carey was involved in any sort of violation of the law as it is unclear exactly what

Defendant Carey affirmed.[13]   However, the allegation that Defendant Carey told Plaintiff his legal and regular mail would be checked by an officer prior to sending and that Defendant Carey offered to check and send Plaintiff's mail for him shows that Defendant Carey was personally involved in any violations of federal laws related to the mail policy.  (*Id.* ¶ 28.)

The sole allegations against Defendant Chmielewski are that Defendant Chmielewski "attempted to intimidate" Plaintiff while Plaintiff was telling Defendant Lee about the fact that his five bags were being searched and that he conducted a pat and frisk. (*Id.* ¶ 25.)  These allegations do not amount to violations of the law.

Defendant Elmanakhey was personally involved, however, because Plaintiff alleges he directly participated in the alleged religious discrimination and retaliation.  (*Id.* ¶¶ 13 – 14 & 19.)

The Second Amended Complaint also establishes Defendant Erns's personal involvement because Plaintiff alleges that Defendant Erns was the individual who illegally searched his bags and intimidated Plaintiff, potentially in retaliation and in violation of directives.  (*Id.* ¶ 24 – 26.) Plaintiff also sufficiently alleged the personal involvement of Defendant Kuntz, who participated in Defendant Ern's allegedly wrongful search of Plaintiff's property and approached Plaintiff about a grievance Plaintiff had submitted against him.  (*Id.*)

Plaintiff alleges that Defendant Franco was called as a witness but "refuse[d] to answer the questions."  (*Id.* ¶ 20.)  This does not amount to a violation of the law by Defendant Franco and, if anything concerns the conduct of the hearing by Defendant Bucolo.

Under a liberal interpretation, Defendant Hoiston was personally involved in alleged retaliation against Plaintiff because he allegedly told Plaintiff to return to his cell after he was

---

[13] Defendants believe that Plaintiff is referring to Defendant Carey's decision affirming the decision of a hearing officer in a separate disciplinary proceeding, (Defs.' Mot. p. 17), but this is unclear from the face of the Second Amended Complaint.

wrongfully removed from the mess hall.  (*Id.* ¶ 15.)

Additionally, there are sufficient allegations to establish Defendant Lieberman's personal involvement, but not that of Defendant Joseph.  Plaintiff alleges that after Defendant Elmanakhey kept asking him about the whereabouts of the extra food, he took Defendant Elmanakhey, along with Defendant Joseph and Defendant Lieberman, to the trash can.  This is not personal involvement in any constitutional violation.  Plaintiff also alleges, however, that Defendant Lieberman told him that he needed to leave the mess hall "after seeing [Defendant] Joseph."  Making every inference in Plaintiff's favor, this is enough to allege the personal involvement of Defendant Lieberman in alleged retaliation against Plaintiff, but not against Defendant Joseph.

Defendant David-Knapp only allegedly transferred Plaintiff to another max facility, and Plaintiff makes no allegations connecting that Defendant with retaliation or knowledge of retaliation.  (*Id.* ¶ 30.)  Corrections officials may transfer inmates to other facilities.  *See Roland v. Smith*, 907 F. Supp. 2d 385, 391 (S.D.N.Y. 2012) ("[The New York Department of Corrections] has the absolute authority to transfer inmates between facilities, and an inmate has no right to be placed in, remain in, or be transferred to a certain facility.").

Defendant Lee was personally involved because he allegedly has maintained an allegedly unconstitutional tee shirt policy  (*Id.* ¶ 9.)

Plaintiff alleges that Defendant Melville affirmed Defendant Bucolo's decision after the disciplinary hearing which Plaintiff alleges violated his rights under federal law.[14]  The Second Circuit has held that an official who affirms the appeal of a hearing officer's decision may be

---

[14] Although Plaintiff specifically alleges that Defendant Melville violated RLUIPA when he affirmed Defendant Bucolo's decision, the Court (Second Am. Compl. ¶ 20), reading Plaintiff's Second Amended Complaint liberally, also determines that Plaintiff claims Defendant Melville violated his due process rights.

personally involved in depriving an inmate of his due process rights. *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986). Accordingly, Plaintiff has plausibly alleged that Defendant Melville was personally involved.

Defendant O'Connors, allegedly, ordered the unconstitutional strip search that Plaintiff claims violated the Eighth Amendment and was thus personally involved. (Second Am. Compl. ¶ 29.)

Defendant O'Neill is mentioned as someone who "help[s] to justify" the state-issued boots which, according to Plaintiff, turned his feet black and caused him to be in violation of prayer ritual. (*Id.* ¶ 11.) But Plaintiff makes no allegations about what it means to "justify" this policy or about Defendant O'Neill's role in creating or enforcing the policy. This is not enough to establish direct or supervisory involvement.

Plaintiff alleges that he filed a grievance against Defendant Santos, and, from context, one could infer that the grievance related to the denial of access to religious services in April 2013. (*Id.* ¶ 7.) However, there are no allegations suggesting what Defendant Santos's role was in this denial, or whether Defendant Santos had any role in that denial.

Because the Second Amended Complaint states that Defendants Annucci, Bucolo, Burnett, Burzo, Carey, Elmanakhey, Erns, Hoiston, Lieberman, Kuntz, Lee, Melville, and O'Connors were personally involved in alleged violations of federal law, the Court will consider Plaintiff's claims against those Defendants.

### III.   Plaintiff's § 1983 claims[15]

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

#### A.  First Amendment

Plaintiff alleges that Defendants violated the First Amendment's Free Exercise Clause and that they also violated the First Amendment by retaliating against him for filing lawsuits and grievances and by denying him access to the courts.

#### 1.   Free Exercise Clause

A plaintiff asserting a Free Exercise Clause claim under the First Amendment must demonstrate that he or she has a sincerely held religious belief which was substantially burdened

---

[15] The Court only analyzes exhausted claims and those claims for which there is a Defendant who was personally involved as established in the analysis *supra*.

by the defendants' conduct and that the defendants' conduct was not reasonably related to some legitimate penological interest.[16]  *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 – 87 (S.D.N.Y. 2015).  "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Monroe v. Gerbing*, No. 16-CV-2818(KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017) (quoting *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)).  "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Rossi*, 2015 WL 769551, at *7 (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) ("[C]ourts that have adhered to a 'substantial burden' requirement in considering the free exercise claims of prison inmates have suggested that demonstrating such a burden is not a particularly onerous task.").  However, even if Plaintiff demonstrates an infringement of his sincere religious beliefs, Defendants' conduct would be "excusable if [it] was supported by legitimate penological interests."[5]  *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003).

The Free Exercise Clause also applies to inmates, who retain some measure of the constitutional protection.  *Id.* at 588.  However, the Second Circuit has recognized that "lawful

---

[16] The Second Circuit has yet to decide whether the substantial burden standard remains viable after the Supreme Court's suggestion in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990) that the standard "embroils courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003)). Nonetheless, courts in this district have continued to apply the substantial burden test absent any contrary instruction from the Second Circuit, particularly where, as here, the continuing application of the standard has not been challenged by either party. *See, e.g.*, *Ford*, 352 F.3d at 588 (assuming that the substantial burden test applies given the plaintiff's failure to argue otherwise and because the parties had not briefed the issue); *Rossi v. Fischer*, No. 13-CV-3167(PKC)(DF), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise."); *Vann v. Fischer*, No. 11-CV-1958(KPF), 2014 WL 4188077, at *8 n.14 (S.D.N.Y. Aug. 25, 2014) (noting that "[i]t is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives"). Additionally, the Second Circuit recently suggested that the substantial burden standard remains in *Tanvir v. Tanzin*, 915 F.3d 898, 902, 905 (2d Cir. 2019).

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted). Therefore, an inmate's First Amendment rights must align with "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588.

### a) State-issued clothing

According to Plaintiff, Defendant Lee "oppress[ed] the plaintiff by having contrary policies concerning wearing T-shirts." (Second Am. Compl. ¶ 9.) The state shop does not sell T-shirts that comply with Defendant Lee's policy. (*Id.*) As a result, Plaintiff was sent away from the mess hall in 2013 for wearing a noncompliant T-shirt during Ramadan, which took place in July in that year. (*Id.*) This is not a violation of Plaintiff's rights to free exercise of religion.[17] To state a facially plausible Free Exercise Clause claim under the First Amendment, Plaintiff must demonstrate that he has a sincerely held religious belief which was substantially burdened by Defendants' conduct and that Defendants' conduct was not reasonably related to some legitimate penological interest. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 – 87 (S.D.N.Y. 2015). Here, Plaintiff does not present facts suggesting any burden to his exercise of religion but merely that because of the policy he had to wear warm clothes in the mess hall during warm months, including July which also happened to coincide with Ramadan.

Plaintiff also alleges that the state-issued boots he received caused his feet to be unclean during prayer in violation of the principles of his religion. (Second Am. Compl. ¶ 11.) Even if there were a Defendant who was personally involved in this policy, Plaintiff's free exercise

---

[17] Additionally, Plaintiff alleges no facts surrounding this issue to suggest retaliation.

claim on this issue would still fail because Plaintiff does not sufficiently allege that the quality of the boots placed a substantial burden on his religious exercise.  "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' "  *Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017).  Here, there are no facts to indicate, even after making every reasonable inference in Plaintiff's favor, that the state issued boots put substantial pressure on Plaintiff to pray when he was unclean.  Plaintiff does not allege that he was denied access to soap, detergents, or a sink in which to wash before prayer.  Courts in similar cases have held that denial of access to a laundry service, where soap or other washing facilities are available to the plaintiffs, is not a constitutional violation.[18]  *See Simmons v. Cripps*, No. 12-CV-1061(PAC)(DF), 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013), *R.&R. adopted* 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013) ("[W]here bar soap and access to a sink is provided to pretrial detainees, as it may have been in this case, the requirements of the relevant constitutional requirements are satisfied."); *Patterson v. City of New York*, No. 11-CV-7976(DLC), 2012 WL 3264354, at *8 (S.D.N.Y. Aug. 9, 2012); *see also Little v. Municipal Corp.*, 51 F. Supp. 3d 473, 491 (S.D.N.Y. 2014).

The same principle applies in this case.  Just as there is no constitutional violation for lack of a laundry service when inmates have access to soap, there is no violation of the Free Exercise Clause here because Plaintiff presumably had access to soap and a sink to wash his feet and socks before his prayer ritual.  *See Patterson*, 2012 WL 3264354, at *8 (holding that the plaintiff, who alleged that laundry services had been discontinued, did not state a claim that his

---

[18] Although these cases do not address violations of the Free Exercise Clause and largely focus on due process, they are analogous to the matter currently before the Court because they involve inmates alleging that their constitutional rights were violated because of the uncleanliness of their clothes.

constitutional rights had been violated because he did "not allege that he was deprived the opportunity to clean his clothes").

### b)   Religious meals

Plaintiff alleges that his right to free exercise was also substantially burdened when, on July 17, 2013, Defendant Elmanakhey stuck his ungloved hands into the religious meals provided for the members of the Nation of Islam and when he stole food for the Nation of Islam and gave it to the Sunni Muslim inmates.  These allegations only outline the isolated actions of one correctional officer and are not violations of the Free Exercise Clause; the facts in the Second Amended Complaint do not suggest that the actions substantially burdened Plaintiff's religious exercise.  They are merely the isolated actions of one correctional officer and are *de minimus*.  "Courts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim." *Washington v. Afify*, 968 F. Supp. 2d 532, 538 (W.D.N.Y. 2013) (citing cases); *see Wright v. Bibens*, No. 17-CV-1917(MPS), 2018 WL 5724009, at *5 (D. Conn. Nov. 1, 2018); *Tafari v. Annets*, No. 06-CV-11360(GBD)(AJP), 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (citing cases).  Thus, Plaintiff has failed to state a facially plausible claim that his right to free exercise was substantially burdened by Defendant Elmanakhey's actions.

Plaintiff's claim that he was denied adequate, Ramadan-complaint meals during eight of his thirty-day disciplinary confinement in violation of his First Amendment right to free exercise must also fail.  Plaintiff does not allege that any Defendants were personally involved in this deprivation.  While Plaintiff notes that his confinement to keeplock was "imposed by Lt. Bucolo" (Second Am. Compl. ¶ 21), he does not allege that Defendant Bucolo, or any other Defendant, was responsible for providing him with religious meals and failed to do so.  While

the plaintiff has the burden, which is not onerous, of showing that a sincerely held religious belief was substantially burdened, *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015), he must also allege that a defendant burdened that belief. *See Mukuria v. Clarke*, No. 15-CV-172, 2016 WL 5396712, at *4 n.5 (W.D. Va. Sept. 27, 2016) (noting that the plaintiff did not claim that any defendant violated his right to free exercise of his religious beleifs and that he had no free exercise claim); *Hill v. Dep't of Justice*, No. 12-CV-5008(LHK)(PR), 2013 WL 489680, at *3 (N.D. Cal. Feb. 7, 2013) (dismissing the plaintiff's free exercise claim because he "has not alleged that any Defendant burdened the practice of Plaintiff's religion without any justification reasonably related to legitimate penological interest"); *Deville v. Crowell*, No. 08-CV-3076(SAC), 2011 WL 4526772, at *6 (D. Kan. Sept. 28, 2011). Therefore, this claim must be dismissed.[19]

c)      **Exclusion from the mess hall**

The day after Plaintiff had a confrontation with Defendant Elmanakhey, who accused Plaintiff of stealing food, Defendant Lieberman told Plaintiff that Defendant Elmanakhey no longer wanted him working in the mess hall serving religious meals and that he had to return to his cell.  (Second Am. Compl. ¶ 15.)  When Plaintiff did not immediately return to his cell, Defendants Burzo,[20] Hoiston, and Lieberman all told him to return to his cell and then proceeded to issue Plaintiff a misbehavior report for refusing direct orders.  (*Id.*)  Plaintiff alleges that this

---

[19] Even if Plaintiff had named a Defendant personally involved in the deprivation of his religious meals for eight days, the Court may not have considered that deprivation to be a substantial burden. *Compare Wright v. Bibens*, No. 17-CV-1917(MPS), 2018 WL 5724009, at *5 – 6 (D. Conn. Nov. 1, 2018) (holding that as a matter of law denial of eight Rastafarian meals over a four day period did not substantially burden the plaintiff's free exercise), *with Lovelace v. Lee*, 472 F.3d 174, 187 – 89 (4th Cir.2006) (holding that a plaintiff's religious exercise rights were substantially burdened when a disciplinary policy excluded him from Ramadan meals during almost the whole holy month).

[20] Assuming Plaintiff intended to claim that Defendant Burzo further violated his right to free exercise by "smoking cigarettes in the gym during Ramadan," that claim would fail.  Plaintiff alleges that the cigarette smoke was disrespectful, particularly during prayer times, but this allegation does not amount to a claim that the act of smoking cigarettes in the gym violated any sincerely held religious belief.

violated his right to free exercise because it denied Plaintiff the opportunity to break the fast with other members of the Nation of Islam as required by the religion.[21] (*Id.* ¶ 17.)

The Court finds that, accepting the facts in the Second Amended Complaint as true, Plaintiff stated a facially plausible claim that his free exercise rights were violated. Interpreting the Second Amended Complaint to raise the strongest argument it suggests, Plaintiff alleged that he had a sincerely held religious belief, which was that he had to break his fast during Ramadan with fellow believers, and that this belief was substantially burdened when Plaintiff was denied the opportunity to do so. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 – 87 (S.D.N.Y. 2015). Causing Plaintiff to leave the mess hall before breaking his fast with other members of the Nation of Islam forced him to modify his behavior in violation of his beliefs, imposing a substantial burden. *Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017). Further, Defendants did not present a legitimate penological interest for removing Plaintiff from the mess hall. While one could infer that Defendants excluded Plaintiff because they thought Plaintiff was stealing food, this would be an inference in favor of Defendants, the moving party. This inference would be contrary to the Rule 12(b)(6) standard which requires the Court to draw reasonable inferences in favor of Plaintiff, the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff does not allege that there was a legitimate penological interest served by removing him from the mess hall, and Defendants do not present any such interest in their opposition. (Mem. of Law in Supp. of Defs.' Mot. Pursuant to Fed. R. Civ. P. 12(b)(6) to Dismiss the Second Am. Compl. ("Defs.' Mot.") p. 12, ECF No. 108.) Therefore, based on the facts in Plaintiff's Second Amended Complaint, Plaintiff states a

---

[21] Plaintiff in fact alleges that this violated RLUIPA, but the Court will also conduct a First Amendment analysis out of deference to Plaintiff's *pro se* status.

facially plausible claim that his First Amendment right to free exercise of religion was violated by Defendants Burzo, Hoiston, and Lieberman when they forced him to return to his cell.

2.     **Retaliation[22]**

To properly plead a First Amendment retaliation claim, Plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*); *see also Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).  An adverse action is any action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Davis*, 320 F.3d at 353 (internal quotation marks omitted).  To establish a causal connection, a plaintiff's allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action."  *Id.* at 354 (quoting *Dawes*, 289 F.3d at 492) (internal quotation marks omitted).

Because  "virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Dawes*, 239 F.3d at 491, "such claims be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Leneau v. Ponte*, No. 16-CV-776(GHW), 2018 WL 566456, at *11 (S.D.N.Y. Jan. 24, 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)) (internal quotation marks omitted).

---

[22] To the extent that Plaintiff alleges that the mail policy in place during the lockdown was retaliatory, that claim would fail. "Courts in this circuit have . . . held that limited withholding or delay of a prisoner's mail does not constitute an adverse action sufficient to support a retaliation claim." *Green v. Niles*, No. 11-CV-1349(PAE), 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012).

Plaintiff alleges that he was issued a false misbehavior report in July 2013 by Defendants Lieberman and Elmanakhey in retaliation for his pending lawsuit relating to the insufficiency of meals during Ramadan.[23] (Second Am. Compl. ¶ 19.) The filing of a law suit is a constitutionally protected activity. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (quoting *Bounds v. Smith,* 430 U.S. 817, 821 – 32 (1977)). Additionally, Plaintiff's allegation that Defendants filed a false misbehavior report in retaliation for Plaintiff's lawsuit is an adverse action because it could deter a similarly situated individual from exercising his constitutional rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). However, even under a liberal interpretation, the Second Amended Complaint does not include more than a conclusory allegation that there was a causal connection between the lawsuit and the misbehavior report, and, therefore, Plaintiff did not state a facially plausible retaliation claim. Conclusory allegations of causal connection are not enough to allow a claim to withstand a motion to dismiss. *Thomas v. DeCastro*, No. 14-CV-6409(KMK), 2018 WL 1322207, at *10 (S.D.N.Y. Mar. 13, 2018) ("Plaintiff has failed to establish any non-conclusory causal connection . . ."); *Brown v. Eagen*, No. 08-CV-0009(TJM)(DRH), 2009 WL 815724, at *12 (N.D.N.Y. Mar. 26, 2009) ("Plaintiff has not proffered non-conclusory allegations showing a causal connection between any of the alleged retaliatory conduct with any of Plaintiff's grievances.").

3. **Access to the courts**

Inmates have a constitutional right to meaningful access to the courts under the First Amendment. *Bourdon v. Loughren,* 386 F.3d 88, 92 (2d Cir.2004) (quoting *Bounds v.*

---

[23] Plaintiff also alleges that he was issued a retaliatory misbehavior report after he filed grievances against Defendants Erns and Kuntz. (Second Am. Compl. ¶ 26.) However, Plaintiff does not allege which Defendant, if any, issued that misbehavior report and does not otherwise implicate any Defendant in the creation of that report.

*Smith,* 430 U.S. 817, 821 (1977)). "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord,* 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003)). "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 353 (1996)).

Plaintiff alleges that, because he was denied special access to the law library and advancement of legal postage, he missed a deadline for two court cases. (Second Am. Compl. ¶ 22.) Aside from Plaintiff's failure to identify deliberate and malicious conduct, let alone any Defendant personally involved in these denials, Plaintiff also only provides conclusory allegations about his injury, alleging that he missed deadlines in "two appeals in the Appellate Division." (*Id.*) For those reasons, Plaintiff did not state a facially plausible claim for denial of access to the courts.

Plaintiff also claims that Defendants, specifically Defendants Annucci, Burnett, and Carey, allowed or carried out a policy which allowed correctional officers to open outgoing legal and nonlegal mail during a lockdown on December 10, 2013. (*Id.* ¶ 28.) Tampering with legal mail implicates an inmate's rights of access to the courts, *Davis,* 320 F.3d at 351, and inmates have the right to be present when their legal mail is opened by prison officials. *See Key v. Artuz*, No. 95-CV-0392(HB), 1995 WL 542466, at *3 (S.D.N.Y. Sept. 13, 1995). However, there is no constitutional violation unless the mail tampering is regular and unjustifiable rather than an isolated incident. *See Shepherd v. Fisher,* No. 08-CV-9297(LTS)(RLE), 2011 WL 3278966, at *2 (S.D.N.Y. July 27, 2011) ("To state a violation of the right of access to the courts, an inmate

must allege that the tampering was part of an ongoing practice of unjustified censorship or that it prejudiced the inmate's legal actions."); *Bellezza v. Holland*, 730 F. Supp. 2d 311, 315 (S.D.N.Y. 2010); *Standley v. Lyder*, No. 99-CV-4711(GEL), 2001 WL 225035, at *2 (S.D.N.Y. Mar. 7, 2001) (holding that the plaintiff failed to state an access to the courts claim by alleging an isolated instance of improper mail procedure).  In this Circuit, "as few as two Incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial governmental interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."  *Davis*, 320 F.3d at 351.

Here, Plaintiff did not allege that his right of access to the courts was unjustifiably chilled or that his legal mail was tampered with on a regular basis, merely that he was told that it would be opened due to a lockdown on December 10, 2013.  Thus, the Second Amended Complaint does not include a facially plausible claim for denial of access to the courts upon which relief can be granted.

IV.     **Eighth Amendment**

"Prison officials violate the Eighth Amendment only when two requirements are met: (1) the alleged deprivation must, objectively, be 'sufficiently serious,' and (2) the alleged perpetrator must possess a 'sufficiently culpable state of mind.' " *Vaughn v. Strickland*, Nos. 12-CV-2696(JPO), 12-CV-3335(JPO), 12-CV-2995(JPO), 12-CV-3333(JPO), 2013 WL 3481413, at *3 (S.D.N. Y July 11, 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, a plaintiff must allege sufficient facts to demonstrate that prison

officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline." *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (internal citations marks omitted).

"For challenges to strip searches in particular, to state an Eighth Amendment violation, courts in this Circuit require that a plaintiff allege that the defendants engaged in egregious conduct." *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016). "Although such claims are more commonly brought under the Fourth Amendment, the manner in which a strip search is conducted may in certain circumstances give rise to an Eighth Amendment claim." *Show v. Patterson*, 955 F. Supp. 182, 191 (S.D.N.Y. 1997); *see also George v. City of New York*, Nos. 12-CV-6365(PKC)(JLC), 13-CV-3511(PKC)(JLC), 13-CV-3514(PKC)(JLC), 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013) ("[A] body cavity search 'not based on reasonable belief standards [ ] and extremely dehumanizing in its method of conduct' violates the Eighth Amendment[.]") (quoting *Frazier v. Ward*, 426 F. Supp. 1354, 1366 (N.D.N.Y. 1977)).

The Second Amended Complaint does not contain sufficient allegations to support a facially plausible Eighth Amendment claim. Plaintiff alleges that he was subjected to cruel and unusual punishment during a lockdown when he and other inmates were forced to strip down to their undergarments, "paraded" past female correctional officers, and required to sit on a BOSS chair after other unclean inmates sat on the same chair. (Second Am. Compl. ¶ 29.) These allegations fall short of malicious or egregious conduct. Searches during lockdowns are routine and, without more, are not cruel or unusual. *See Little v. Municipal Corp*., 51 F. Supp. 3d 473, 498 (S.D.N.Y. 2014) (granting the defendants' motion to dismiss the plaintiff's Eighth Amendment claim because the strip and cell searches in question occurred during a lockdown and were justifiable).

Any allegation that Plaintiff had to sit on the BOSS chair after individuals with dirty underwear sat in the chair also fails to amount to a constitutional violation because Plaintiff's allegations are conclusory and fail to specify egregious or malicious conduct. Based on Plaintiff's statements, he was wearing underwear when he sat on the BOSS chair, and he does not allege that there was feces or any other harmful substance on the chair, only that inmates wearing "dirty" boxers sat on the chair before he did. This is not enough to support an Eighth Amendment claim. *See Washington v. Afify*, 968 F. Supp. 2d 532, 535 (W.D.N.Y. 2013) (holding that the plaintiff did not allege an Eighth Amendment violation for being forced to clean human feces because he never alleged that he risked being directly exposed to any "noxious or harmful substances").

That inmates, including Plaintiff, were required to strip in front of female correctional officers also does not amount to a constitutional violation. "Case law reflects that the constitutionality of a strip search is not negated by the presence of other inmates and employees of the facility—of either sex—during the search." *Montgomery v. Hall*, No. 11-CV-4645(PAC)(GWG), 2013 WL 1982920, at *4 (S.D.N.Y. May 15, 2013) (citing cases). This is particularly true where the search in the presence of opposite-sex correctional officers is conducted for a legitimate penological purpose. *See Baker v. Welch*, No. 03-CV-2267(JSR)(AJP), 2003 WL 22901051, at *14 (S.D.N.Y. Dec. 10, 2003). Here, based on the face of the Second Amended Complaint, the search occurred during a lockdown,[24] and Defendants did not act maliciously or egregiously in conducting the search. Rather, Plaintiff alleges that the search was cruel and unusual solely because of the presence of correctional officers of the

---

[24] No allegations in the Second Amended Complaint, even under a liberal interpretation, suggest that the search was not conducted for a legitimate penological interest.

opposite sex.  Plaintiff's allegations, taken as true, are not enough to support a facially plausible Eighth Amendment claim.[25]

V.      **Fourteenth Amendment**

      A.      **Due Process Clause**

To state a claim for denial of due process at a disciplinary hearing, an inmate must identify a constitutionally protected interest of which he was deprived and then show that he was deprived of that interest without due process.  *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001). "A prisoner's liberty interest is implicated by prison discipline, such as [Special Housing Unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards*, 364 F.3d 60, 64 (2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

After a disciplinary hearing, Defendant Bucolo sentenced Plaintiff to thirty days in keeplock confinement.  (Second Am. Compl. ¶ 21.)  Courts in the Second Circuit have consistently held that thirty days in restrictive confinement is not a significant hardship implicating a liberty interest.  *See e.g.*, *Anderson v. Lapolt*, No. 07-CV-1184, 2009 WL 3232418, at *11 (N.D.N.Y. Oct. 1, 2009) (citing cases); *Ochoa v. DeSimone*, No. 06-CV-119(DNH)(RFT), 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (citing cases); *Williams v. Keane*, No. 95-CV-0379(AJP)(JGK), 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases). "Without denial of a cognizable liberty interest, there can be no due process violation." *Thompson v. LaClair*, No. 08-CV-0037(FJS)(DEP), 2009 WL 2762164, at *5 (N.D.N.Y. Aug. 25, 2009).  Thus, because Plaintiff was not subjected to an atypical and significant hardship, he

---

[25] Any Eighth Amendment cruel and unusual claim related to the alleged denial of food would also be dismissed because Plaintiff's allegations related to this issue are either vague or fail to sufficiently allege the personal involvement of any Defendant.

failed to allege a due process violation for the hearing, and he has no plausible claim against

Defendants Bucolo or Melville.[26]  *See Aikens v. Royce*, No. 14-CV-663(KMK), 2015 WL

7758892, at *7 (S.D.N.Y. Dec. 1, 2015) (granting the defendants' motion to dismiss the

plaintiff's due process claim against the hearing officer because no protected liberty interest was

implicated; the plaintiff was only sentenced to thirty days in keeplock and did not plausibly

allege that there were atypical issues with his confinement).

### B.     Equal Protection Clause

The Fourteenth Amendment to the United States Constitution declares that "[n]o State

shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, § 1.  "The Equal Protection Clause is essentially a direction that all persons

similarly situated should be treated alike."  *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir.

2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.,

Inc.*, 473 U.S. 432, 439 (1985)).

Under a liberal interpretation, the Second Amended Complaint contains an allegation that

Defendant Elmanakhey violated the Equal Protection Clause when he treated Sunni Muslims and

members of the Nation of Islam differently by stealing food from the Nation of Islam tray and

giving it to the Sunni Muslims.  (Second Am. Compl. ¶¶ 13 & 43.)  Assuming these allegations

are true, they do not amount to a violation of the Equal Protection Clause.  The Equal Protection

Clause guarantees equal protection of the laws.  U.S. Const. amend. XIV, § 1.  A lone

---

[26] Plaintiff alleges that he was denied equal protection of the laws by Defendant Bucolo when that
Defendant refused to allow one of Plaintiff's witnesses to testify. (Second Am. Compl. ¶¶ 34 & 43.) This is in fact a
due process allegation, and because the Second Amended Complaint does not plausibly allege that Defendant
Bucolo deprived Plaintiff of a protected liberty interest, the Court need not address the conduct of the hearing.

government official stealing food from one group to give it to another is in fact acting outside of the rules.[27]  Accordingly, Plaintiff's Equal Protection Clause claim must be dismissed.[28]

## VI.    Plaintiff's RLUIPA claims

Plaintiff alleges that the strip search during which Plaintiff and other inmates were required to sit in the BOSS chair in their boxers violated RLUIPA because the BOSS chair was unclean and because inmates were required to undress in front of women for the search. RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrate that the imposition of the burden on that person" is both "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a). Religious exercise is substantially burdened under RLUIPA when the state puts substantial pressure on a believer to modify her behavior.  *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *Alster v. Goord*, 745 F. Supp. 2d 317, 341 (S.D.N.Y. 2010).

Here, even under a liberal interpretation, Plaintiff's Second Amended Complaint fails to state a facially plausible claim under RLUIPA.  Plaintiff fails to allege how the act of complying with the BOSS search substantially burdened his religious exercise.  While Plaintiff states that the BOSS chair was unclean after "several hundred prisoner[s]" sat on it with dirty underwear and that this process was happening in the presence of women working as guards, he makes no

---

[27] Plaintiff also does not allege that he filed any grievance related to these instances of Defendant Elmanakhey's discrimination between Nation of Islam and Sunni Muslims.

[28] According to Plaintiff, the Equal Protection Clause was violated when he was transferred to Green Haven "in retaliation for the pending lawsuit."  (Second Am. Compl. ¶¶ 6 & 34.)  This allegation is conclusory and does not implicate the personal involvement of any Defendant.

allegations that this burdened his religious exercise.  (Second Am. Compl. ¶ 29.)  He only states that "[o]n a normal bases they would never allow prisoners to freely undress like that before female officers."  (*Id.*)  This allegation does not involve religious exercise.  Therefore, because a valid RLUIPA claim requires that religious exercise be substantially burdened, 42 U.S.C. § 2000cc-1(a), Plaintiff has failed to state a facially plausible RLUPIA claim.

Plaintiff also alleges that his free exercise rights under RLUIPA were violated when he was removed from the mess hall and forced to return to his cell.  (Second Am. Compl. ¶ 17.) "Whether or not a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 587 (S.D.N.Y. 2015).  Therefore, because the Court determined *supra* Part III(A)(1)(c) that Plaintiff stated a facially plausible claim that Defendants violated his First Amendment right to free exercise by removing him from the mess hall before he could break his fast with other believers during Ramadan, the Court finds that Plaintiff has stated a facially plausible RLUIPA claim on this issue, as well.

Finally, Plaintiff claims that Defendant Bucolo violated RLUIPA by "punish[ing] him for observing Ramadan," and that Defendant Melville violated the same statute for affirming Defendant Bucolo's decision.  (Second Am. Compl. ¶ 20.)  "Whether asserted under the First Amendment or the RLUIPA, a religious liberty claim requires the prisoner demonstrate 'that the disputed conduct substantially burdens his sincerely held religious beliefs.' " *Ramsey v. Goord*, 661 F. Supp. 2d 370, 395 (W.D.N.Y. 2009) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 274 – 75 (2d Cir.2006)).  Plaintiff's allegations against Defendants Bucolo and Melville do not suggest that the hearing itself, or the act of affirming the hearing decision, substantially burdened Plaintiff's sincerely held religious beliefs, only that Plaintiff subjectively believed he was being

punished for his religion.  This, without more, is insufficient to support a facially plausible claim.

## VII.    Qualified Immunity

Plaintiff's sole remaining claim is that Defendants Burzo, Hoiston, and Lieberman violated his rights under the First Amendment and RLUIPA[29] when they required him to return to his cell before he broke his fast with fellow members of the Nation of Islam.  Defendants allege that this claim should be dismissed because they are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)).  However, at the motion to dismiss stage, defendants "must accept [a] more stringent standard." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  The "facts supporting the defense [must] appear on the face of the complaint," *id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), and the motion must only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).  The burden of proof is on the defendant to establish the

---

[29] Qualified immunity may be invoked against both § 1983 claims and claims under RLUIPA. *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010).

affirmative defense of qualified immunity. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

Here, Defendants do not satisfy that burden. "The Second Circuit has, for decades, recognized that prison officials may not substantially burden inmates' right to religious exercise without some justification." *Hammock v. Pierce*, No. 15-CV-9052, 2018 WL 2108244, at *5 (S.D.N.Y. May 7, 2018) (citing *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)). Defendants do not present any argument that reasonable persons in their position would not have understood that their actions violated Plaintiff's constitutional and statutory rights. *See Barnes v. Furman*, 629 F. App'x 52, 56 (2d Cir. 2015) (holding that the defendants were not entitled to qualified immunity because they did not present a "legitimate penological interest" to justify infringing on the plaintiff's exercise of religion). Therefore, they are not entitled to qualified immunity.

## VIII.    Revocation of *in forma pauperis* ("IFP") status

Defendants request that the Court revoke Plaintiff's IFP status and require Plaintiff to pay the full filing fee within thirty days because Plaintiff has had at least three actions in federal court dismissed on the merits under Rule 12(b)(6) or as frivolous or malicious. (Defs.' Mot. pp. 24 – 25.)

Defendants make this request pursuant to the three strikes provision of the PLRA, which provides the following:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

36

28 USCA § 1915(g). Plaintiff has not presented any allegation that he is under imminent danger of serious physical injury or that any of the alleged strikes should not count but instead argues that because he is no longer incarcerated, he should not be subjected to the three strikes limitation articulated in the PLRA. By that logic, Plaintiff's IFP status should have terminated upon his release from custody.

In two cases, *Amaker v. McDonnell*, No. 96-CV-2298 (S.D.N.Y.) and *Amaker v. Connelly*, No. 96-CV-2813 (S.D.N.Y.), the court dismissed Plaintiff's cases pursuant to 28 U.S.C. § 1915(d) as frivolous. The Second Circuit in *Amaker v. Haponik*, No. 02-138 (*see* docket entry for Dec. 20, 2002) and *Amaker v. Goord*, No. 02-227 (*see* docket entry for Feb. 20, 2003) dismissed Plaintiff's appeals because they had no arguable basis in law or fact.

Accordingly, the Court terminates Plaintiff's IFP status not because he was released from custody but because he has more than three strikes and does not claim to be under imminent danger of serious physical injury. *See Loccenitt v. LaBrake*, 2019 WL 1060802, at *3 (W.D.N.Y., 2019) ("[P]ursuant to the mandate of 28 U.S.C. § 1915(g), the Court must revoke Plaintiff's IFP status unless he has claimed to be under imminent danger of serious physical injury; however, Plaintiff has made no such allegations here.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully directed to terminate all Defendants except for Defendants Burzo, Hoiston, and Lieberman from this action. Additionally, because Plaintiff has more than three strikes, the Clerk of the Court is directed to terminate Plaintiff's IFP status. Plaintiff must pay the $400.00 filing fee and administrative fees on or before June 3, 2019. If Plaintiff does not timely pay those fees, his Second Amended Complaint will be dismissed without prejudice and the Clerk of the Court will terminate this case. Remaining Defendants Burzo, Hoiston, and Lieberman must file their answer on or before June 18, 2019. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 120 and 121, mail a copy of this Opinion to Plaintiff at his address as listed on ECF, and show proof of service on the docket.

Dated:   May 3, 2019                       SO ORDERED:
         White Plains, New York

                                           NELSON S. ROMÁN
                                    United States District Judge