USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/31/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY D. AMAKER,

                              Plaintiff,

        -against-

LIEBERMAN, et al.,

                              Defendants.

No. 13-cv-5292 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Anthony Amaker ('Plaintiff' or "Amaker") proceeding *pro se* originally commenced this action against multiple individuals and entities, including Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Corrections Officer Michael Burzo, Eric Hoiston, and Ryan Lieberman (collectively, Defendants). Plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* and 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 2.) Presently before the Court is Defendants' motion for summary judgment pursuant to the Federal Rules of Civil Procedure Rule 56 ("Rule 56"). (ECF Nos. 166.) For the following reasons, Defendants' unopposed motion is GRANTED.[1]

## PROCEDURAL BACKGROUND

Plaintiff commenced the action on July 24, 2013, against multiple employees of DOCCS. (ECF No. 2.) On August 25, 2014, Plaintiff filed an Amended Complaint ("FAC") asserting addition claims and naming additional DOCCS employees. (ECF No. 36.) On September 21, 2016, Plaintiff filed a Second Amended Complaint ("SAC") asserting additional claims. (ECF No. 87.)

---

[1] Plaintiff was afforded multiple extensions and failed to file any opposition to the motion. *See* Opinion and Order, dated June 6, 2022. (ECF No. 173.)

On February 28, 2018, Defendants moved pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") to dismiss Plaintiff's SAC. (ECF No. 107.) By Memorandum Endorsement dated March 29, 2018, the Court denied Defendants' motion to dismiss without prejudice to renew. (ECF No. 113.) On September 13, 2018, Defendants once again moved to dismiss Plaintiff's SAC pursuant to Rule 12(b)(6). (ECF No. 120.) By Opinion and Order dated May 3, 2019, the Court dismissed all of Plaintiff's claims with the exception for those claims asserted pursuant to the First Amendment's Free Exercise Clause as against Defendant Correctional Officers Michael Burzo ("Burzo"), Eric Hoiston ("Hoiston") and Ryan Lieberman ('Lieberman") (collectively "Defendants"). (ECF No. 128.) On March 26, 2022, following the completion of discovery, the remaining Defendants moved for summary judgment seeking to dismiss Plaintiff's remaining First Amendment Free Exercise claims. (ECF Nos. 166.)

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's verified SAC (the operative complaint), Plaintiff's deposition, and interrogatories.[2] The facts are undisputed, unless otherwise noted.

At all relevant times, Plaintiff was an inmate in the custody of DOCCS.  (SAC. ¶ 3.)  On or about March 19, 2013, Plaintiff was transferred to and housed at the Green Haven Correctional Facility ("Green Haven"). (*Id.* at ¶ 6.) Plaintiff purports to be a member of the Nation of Islam

---

[2] Local Civil Rule 56.1(a) of the Local Rules of the States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to provide "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Each paragraph "must be followed by citation to evidence which would be admissible" at trial. Local Civil Rule 56.1(d).

When a party fails to file a Rule 56.1 Statement of Facts, the court may choose to accept all factual allegations of the opposing parties as true in deciding the motion for summary judgment, or alternately "opt to conduct an assiduous review of the record*." Holtz v. Rockefeller*, 258 F.3d 62, 73 (2001); *see also Sawyer v. Wight*, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (holding that where Rule 56.1 has not been properly followed, courts may "discretionarily choose to search the record of their own accord" (internal citations omitted)).

("N.O.I."). (Deposition of Plaintiff Anthony D. Amaker ("Plf. Dep.") at 13, ECF No. 168-1). There were multiple Muslim religious groups at Green Haven, including Shia, Sunni and the N.O.I. groups. Each of these Muslim groups observe the holy season of Ramadan, which was held in the month of July in 2013. (*Id.*)

For Ramadan, members of the Muslim faith gather, pray, and fast daily for the entire month, except during evening hours. (*Id.* at 14–16.) For Ramadan, Muslim inmates at Green Haven gather around 5:00 to 5:30 pm, before sundown, in the gym for service. (*Id.* at 17, 21.) After prayers, service, and the teachings, the inmates were escorted, in small groups, by correctional officers to one of two mess halls. (*Id.* at 24, 26, 28, 30, 32, 38.) Members of the N.O.I. were escorted to one mess hall, Shia and Sunni members were escorted to the other. (*Id.* at 38.) Prior to proceeding to the mess halls, the officers would perform a head count of the inmates. (*Id.* at 34–35.)

On July 18, 2013, Plaintiff was assigned to work as a server in the mess hall where members of the N.O.I. were designated to eat during Ramadan. (*Id.* at 33, 40, 66.) At the time, Ahmed El-Maniki ("El-Maniki") was the head cook. (*Id.* at 49.) As a server, Plaintiff was tasked with, among other things, preparing Sahor bags, which contained several food items which were to be given to the inmates as a pre-dawn meal during Ramadan. (*Id.* at 68, 70.) In addition to preparing the Sahor bags, El-Maniki instructed Plaintiff to dispose of all the left-over food once sufficient bags were made. (*Id.* at 69.) Upon completion of the bags, Plaintiff did as he was instructed and threw away the remaining food items. (*Id.* at 76.) Just as Plaintiff was in the process of completing a Sahor bag for himself—prior to completing his shift in the mess hall and before rejoining the other inmates—El-Maniki accused Amaker of failing to dispose of the excess food

and stealing food for himself. (*Id.* at 69, 79.) Defendant Lieberman was present in the kitchen area at the time. (*Id.* at 70.)

The following day, July 19, 2013, Plaintiff attended religious service and afterwards returned to the mess hall to work as a server. (*Id.* at 85.) When he arrived at the mess hall, Defendant Lieberman informed Plaintiff that El-Maniki did not want Plaintiff in the kitchen area. Following Defendant Liberman's directive, Plaintiff remained in the mess hall and did not enter the kitchen. (*Id.* at 85.) It was Plaintiff's intention to remain in the mess hall and distribute Sahor bags to fellow inmates. (*Id.* at 86.) Moments later, Defendant Lieberman returned from the kitchen and informed Plaintiff that El-Maniki did not want him in the kitchen nor in the mess hall and was directed to immediately return to his cell without any food. (*Id.* at 87, 99.) Plaintiff understood that Defendant Lieberman was merely following El-Maniki's instructions (*Id.* at 97.) Plaintiff requested to speak to a sergeant but was not allowed to do so. (*Id.* at 87, 89.) It was Plaintiff's understanding that he required an officer's escort in order to return to his cell, but none was provided. (*Id.* at 88.)

As Plaintiff was about to exit the mess hall to return to his cell, Defendant Burzo entered and likewise ordered Plaintiff to return to his cell. (*Id.* at 89.) Defendant Burzo directed Plaintiff to proceed in the direction of Defendant Hoiston who was located outside of the mess hall in one of the corridors.[3] (*Id.* at 89, 91, 102.) Soon thereafter, Plaintiff was escorted to his cell by Defendant Burzo and several other officers. (*Id.* at 92–93.) A partial food tray, without a Sahor bag, was delivered to Plaintiff's cell. Prior to leaving the mess hall, Plaintiff was not allowed to take a Sahor bag with him. (*Id.* at 93.) Later, Plaintiff came to learn that he was placed on

---

[3] In his SAC, Plaintiff also avers that Defendant Hoiston was not present in the mess hall during the alleged disturbance.

"keeplock," meaning that he was required to remain in his cell. (*Id.* at 92.)  Plaintiff remained in "keeplock" the following day, July 20, 2013, as well. (*Id.* at 94.)

Plaintiff acknowledges that on July 19, 2013, a misbehavior report was issued against him for creating a disturbance in the mess hall. (*Id.* at 137.) In his SAC, he avers that Defendant Lieberman issued him a misbehavior report only after being instructed to do so by a supervisor. (SAC ¶ 15.) The report referenced the incident wherein Plaintiff was accused of smuggling food. (Plf. Dep. at 147.) Plaintiff further acknowledges that he was granted a hearing and challenged the allegations but did not prevail. (*Id.* at 138, 140.) In essence, the allegations that Plaintiff caused a disturbance were sustained.  (*Id.*) Plaintiff appealed the determination, but he does not recall any details regarding to whom it was directed or the contents of the decision. (*Id.* at 155–56.)

On July 18, 2013, Defendant Lieberman was assigned the post of kitchen officer. (Defendants' Response to Plaintiff's 2021 Interrogatories for C.O. Ryan Lieberman ("Lieberman ROGs") at No. 1, ECF No. 168-2.) Defendant Lieberman believed Sergeant Joseph was his immediate supervisor at the time. (*Id.* at No. 2.) While stationed in the kitchen, El-Maniki accused Plaintiff of smuggling food in a garbage bag. (*Id.* at No. 5.) After discussing the matter with El-Maniki and Plaintiff, Defendant Lieberman agreed not to issue a misbehavior report and merely gave a verbal warning and counseling. (*Id.*) Defendant Lieberman further advised Plaintiff that he could no longer work in the kitchen nor in the mess hall but could remain in the mess hall with the other inmates, go to service, and sit with other members of the N.O.I.  in observance of his religious practice. (*Id.*)

On July 19, 2013, Plaintiff returned to the mess hall and attempted to work by distributing Sahor bags to inmates. (SAC ¶¶ 15–18.) After El-Maniki objected to Plaintiff's conduct, Defendant Lieberman instructed Plaintiff to cease working and return to his cell. (SAC ¶ 15.)  After Plaintiff

refused to go and continued to insist on speaking to a supervisor, Defendant Lieberman issued a misbehavior report. (*Id.* at ¶ 15.)

On July 18 and 19, 2013, Defendant Hoiston was working at Green Haven. (Defendants' Response to Plaintiff's 2021 Interrogatories for C.O. Eric Hoiston ("Hoiston ROGs") at No. 1, ECF No. 168-5.). During Ramadan, he was assigned to patrol corridors B and C. (*Id.*) Defendant Hoiston was unaware of any incident or situation in which he directed Plaintiff to return to his cell nor does he recall an incident wherein he observed Plaintiff without an escort. (*Id.* at No. 11.) Although he is aware that during Ramadan an incident occurred in the mess hall, Defendant Hoiston was not present nor personally involved in the incident. (*Id.* at No. 22.) Defendant Hoiston did not recall working on any reports made in connection with Plaintiff's claims. (*Id.* at No. 16.)

Defendant Burzo was assigned as an escort officer during Ramadan. (Defendants' Response to Plaintiff's 2021 Interrogatories for Michael Burzo ("Burzo ROGs") at No. 1, ECF No. 168-4.). As an escort officer, he was responsible for escorting inmates throughout various areas of the facility and when directed by a supervisor to remove inmates from particular areas if they were causing a disturbance. (*Id.* at No. 12.) Although Defendant Burzo recalls that he was ordered by a supervising sergeant to escort Plaintiff back to his cell, he does not recall specifically why Plaintiff was directed to return to his cell. (*Id.* at No. 8.) Moreover, Defendant Burzo was not present at the time of the incident and therefore lacks personal knowledge concerning the incident which led to the report being issued. (*Id.*) On July 19, 2013, after Plaintiff was instructed to return to his cell, Defendant Burzo informed Plaintiff that he could take his meal with him back to his cell, but he chose not to do so. (*Id.* at No. 21)

## LEGAL STANDARDS

### I.    RULE 56

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013*); Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor*." Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (*quoting Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to

resolve disputed questions of fact . . . ."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

District courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *Healthfirst, Inc. v. Medco Health Solutions, Inc.*, No. 03 Civ. 5164(RLC), 2006 WL 3711567, at *5 (S.D.N.Y. Dec. 15, 2006).

Where a party fails to file a Rule 56.1 Statement of Facts, the court may choose to accept all factual allegations of the opposing parties as true in deciding the motion for summary judgment, or alternately "opt to conduct an assiduous review of the record." *Holtz*, 258 F.3d at 73; *see also Sawyer v. Wight*, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (holding that where Rule 56.1 has not been properly followed, courts may "discretionarily choose to search the record of their own accord" (internal citations omitted)).

## II.    SECTION 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.

2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

### III.   FREE EXERCISE CLAUSE

The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment *(see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Constitution, Art 1.  Inmates and detainees have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).  The rights to free exercise of religion must be balanced rights against the interests of prison officials charged with complex duties arising from administration of the penal system. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990). A Free Exercise claim of an inmate is  "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir.1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

A plaintiff asserting a First Amendment Free Exercise Clause claim must demonstrate that he or she has a sincerely-held religious belief which was substantially burdened by the defendants' conduct and that the defendants' conduct was not reasonably related to some legitimate penological interest.  *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 – 87 (S.D.N.Y. 2015). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Monroe v. Gerbing*, No. 16-CV-2818(KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017) (quoting *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)). "Significantly, the plaintiff's burden in demonstrating

substantial burden is not a particularly onerous task." *Rossi*, 2015 WL 769551, at *7 (internal

quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004)

("[C]ourts that have adhered to a 'substantial burden' requirement in considering the free exercise

claims of prison inmates have suggested that demonstrating such a burden is not a particularly

onerous task.").  However, even if Plaintiff demonstrates an infringement of his sincere religious

beliefs, Defendants' conduct would be "excusable if [it] was supported by legitimate penological

interests." *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003).

## DISCUSSION

Plaintiff's sole remaining claim is for the alleged violation of the First Amendment Free

Exercise Clause. In particular, Plaintiff's claim stems from an incident which occurred in or about

July 19, 2013, during the season of Ramadan, when he was directed by Defendant Lieberman to

return to his cell and escorted from the mess hall to the cell by Defendant Burzo prior to the

completion of the religious service. Defendants assert that Plaintiff's claim must be dismissed for

lack of personal involvement and that the alleged directive to Plaintiff that he return to his cell did

not substantially burden his right to practice his religion. (*See generally* Defendants' Memorandum

of Law in Support of Defendants' Motion for Summary Judgment, ECF No. 169.) For the

following reasons, the Court agrees.

A central component of a Section 1983 claim is defendant's personal involvement in the

alleged constitutional violation. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)

("It is well settled that, in order to establish a defendant's individual liability in a suit brought under

§ 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged

constitutional deprivation"). Personal involvement may include, but is not limited to, direct

participation in the alleged violations.  *See Platt v. Village of Southampton*, 391 F. App'x 62, 65

(2d Cir. 2010) (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir. 1989)).  The Second Circuit has previously found that the personal involvement of a supervisory defendant may be established by allegations that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights or inmates by failing to act on information indicating unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).  However, courts in this Circuit are "divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Allah v. Annucci,* No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 7, 2017).

Personal liability upon a defendant may not be premised on the respondeat superior or vicarious liability doctrines, "[n]or may a defendant be held liable merely by his connection to the events through links in the chain of command." *Morris v. Eversley*, 282 F. Supp. 2d 196, 203 (S.D.N.Y. 2003) (quoting *Reynolds v. Goord*, No. 98 Civ. 6722(DLC), 2000 WL 235278, at *7 (S.D.N.Y. Mar.1, 2000)). Further, it is not enough to demonstrate that a defendant is a "link in the prison chain of command," the actor must directly participate in the constitutional violation. *Frederick v. Sheahan*, No. 6:10–CV–6527(MAT), 2014 WL 3748587, at *2 (W.D.N.Y. July 29, 2014) (quoting *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir.2004)).

Here, it is undisputed that Defendants Burzo and Hoiston did not directly participate in the alleged constitutional violation. Neither Burzo nor Hoiston were present in the kitchen when El-Maniki accused Plaintiff of stealing food. (Hoiston ROGs Nos. 11, 22; Burzo ROGs No. 8.) Nor were they present for the disturbance that occurred in the mess hall the following day. (Hoiston

ROGs Nos. 11, 22; Burzo ROGs No. 8.) It is further undisputed that Defendants Burzo and Hoiston were not involved in the issuance of the misbehavior report issued to Plaintiff for creating a disturbance which resulted in Plaintiff being sent back to his cell for "keeplock" during Ramadan. (Hoiston ROGS No. 16; Burzo ROGs No. 8.) Defendants Burzo and Hoiston's conduct, merely escorting Plaintiff back to his cell (Burzo ROGs No. 8), is insufficient to constitute direct involvement. Since there are no material issues of fact as to their lack of personal involvement, the claims against Defendants Burzo and Hoiston must be dismissed.

Although there is a material issue of fact as to Defendant Lieberman's direct involvement in Plaintiff's alleged constitutional violation,[4] the claim against him must nevertheless be dismissed. On July 18, 2013, El-Maniki accused Plaintiff of stealing food from the kitchen. (Plf. Dep. At 69, 79.) Despite the accusation, no misbehavior report was issued against Plaintiff, and he was notified that he was no longer permitted to work in the mess hall thereafter. (Lieberman ROGs No. 5.) Plaintiff asserts that he was merely prohibited from working in the kitchen, which did not include the mess hall.  (Plf. Def. at 97–98.) Although Defendant Lieberman's recollection differs from Plaintiff's, they both agree that on July 19, 2013, Plaintiff returned to the mess hall and distributed food (*i.e.,* Sahor bags) to fellow Muslim inmates who were observing Ramadan. (Plf. Dep. at 85; SAC ¶¶ 15–18.) It is undisputed that after it was discovered that Plaintiff was distributing food, he was ordered to stop and again reminded of the directive which prohibited him from doing so. (Plf. Dep. at 85–86.) It is further undisputed that Plaintiff contested the directive to cease serving food and that he created a disturbance for which he was issued a misbehavior report. (SAC ¶ 15.) Notably, the misbehavior allegation was sustained following a formal hearing. (Plf. Dep. at 140.) As a result of the disturbance, Plaintiff was ordered to return to his cell which he

---

[4] Plaintiff avers in his SAC that Lieberman issued the misbehavior report after he was directed to do so by his supervisor.

alleges interfered with his observance of Ramadan. (*Id.* at 92–94.) More specifically, Plaintiff was denied the opportunity to participate in a communal meal and break his fast during one night of Ramadan.

The central issue is whether the Defendant Lieberman's conduct, the alleged violation of Plaintiff's First Amendment rights, was reasonably related to some legitimate penological interest which did not substantially burden Plaintiff's religious rights. In making a reasonableness determination, Courts are required to consider four factors:

> [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [ 4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal citations omitted). Applying the relevant factors, it is the Court's determination that Defendant's conduct was reasonably related to a legitimate penological interest and did not substantially burden Plaintiff's religious rights.

Although Plaintiff was denied the opportunity to participate in a communal meal with his fellow N.O.I. members, he concedes that he received a meal (which according to his account did not include the Sahor bag (Plf. Dep. at 93)) after he was returned to his cell. Therefore, Plaintiff was allowed to end his fast but not in a communal setting. Further, Plaintiff's religious expression was interfered with only one day out of the thirty (30) days of Ramadan. Courts in this Circuit have held that missing one or two religious services does not constitute a substantial burden on an inmate's right to the free exercise of his religion. *See Gill v. DeFrank*, 8 F. App'x 35, 37 (2d Cir. 2001) (missing only one day of religious service did not substantially burden inmate's free exercise rights, which warranted dismissal of plaintiff's claim); *Smith v. Graziano*, 2010 WL 1330019, at *9 (N.D.N.Y. 2010) (the cancellation of two religious services did not substantially burden

13

Plaintiff's free exercise rights). Defendant Lieberman's stated reason for ordering Plaintiff to return to his cell prior to participating in the communal breaking of fast—maintaining security and order—has been deemed a legitimate penological interest. See *Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006). Because it has been determined that Defendant's conduct did not constitute a violation of Plaintiff's First Amendment rights pursuant to the Free Exercise Clause, the Court need not reach, and does not consider, the issue of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's First Amendment claim is GRANTED. Plaintiff's remaining claim is dismissed with prejudice.

The Clerk of Court is respectfully directed to enter judgment in favor of the Defendants. The Clerk of the Court is also directed to terminate the motion at ECF No. 166 and to close the case.

The Clerk of Court is further directed to mail a copy of this Opinion to *pro se* Plaintiff's address as listed on ECF and to show service on the docket.


Dated:   March 31, 2023                              SO ORDERED:
         White Plains, New York


_____
         NELSON S. ROMÁN
         United States District Judge